REQUESTED BY: Senator Calvin F. Carsten Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Carsten:
You have asked whether clarifying language is needed in LB 284 to make clear exactly how funds are to be distributed to individual subdivisions under sections 4 and 10 of the bill. We believe it would be helpful to have such clarification, although we have an opinion as to how it should be construed in its present form.
Sections 4 and 10, in identical language, provide for distribution to the political subdivisions within a county of funds distributed to the county pursuant to sections 3 and 9 respectively. Sections 4 and 10 provide that each political subdivision in the county, including the county itself, with authority to levy a tax shall receive a portion of such funds based on the percentage of total taxes levied in the county that was levied by the particular subdivision `during the prior calendar year.' The distributions to the counties, and then to the subdivisions, will be made in seven equal monthly payments, starting in December of each year.
The use of the language `prior calendar year' is certainly susceptible of meaning that a distribution begun in December of 1981 should be based upon levies made in 1980.
We are inclined, however, not to construe it in that way, for several reasons.
In the first place, distributions to the counties pursuant to section 3 are to be based on `the most current County Abstract of Assessment Form 45.' See section 2(3). In December of any year that would be the abstract of assessment for that calendar year. The funds distributed to the counties pursuant to section 9 are to be distributed based on `the most recent certificate of taxes levied pursuant to section 77-728.' Again, in December of any year that would be the certificate pertaining to that year.
We would find it very anomalous for the distributionsto the counties to be based upon one year's figures, and distributions by the counties to be based on those of the preceding year, for no discernible reason.
Furthermore, sections 5(2) and 11(2) provide for newly created taxing subdivisions to receive `commencing the first year such levy generates tax receipts' a share of the funds to be distributed. A political subdivision created in time to make a levy in a particular year would, or might, receive taxes from that levy in the year the levy was made, since Neb.Rev.Stat. § 77-203 (Reissue 1976) makes such taxes due and payable on December 31 following the date of levy. It would be strange, indeed, if the distributions to newly created subdivisions were to be based on one year's levy, and distributions to other subdivisions were to be based on those of another year.
Since six of the seven payments to the political subdivisions will be made after the first of the year, it can be said that those are based on the levies made `the prior calendar year.' Obviously, however, all seven distributions must be made on the same basis. Perhaps it was because most of the distributions would be made after the first of the year that the Legislature used the language it did.
However, your question was whether there was a need for clarifying legislation. It would certainly be advisable, as it would eliminate numerous questions and countless complaints from affected persons who disagree with this construction. It would be particularly advisable if our construction does not agree with the Legislature's intention.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General